[Crim. No. 36. Fourth Appellate District.—July 21, 1931.]

THE PEOPLE, Respondent, v. ADAM COLDWELL, Appellant.

Fred Duffy for Appellant.

U. S. Webb, Attorney-General, and John L. Flynn, Deputy Attorney-General, for Respondent.

GRIFFIN, J., *pro tem.*—This appeal is prosecuted by appellant from a judgment against him pursuant to his conviction of the crime of manslaughter, and from an order denying his motion for new trial.

Appellant was informed against by the district attorney of San Bernardino County. The information charged that on the fourteenth day of April, 1930, appellant did wilfully, unlawfully, feloniously and with malice aforethought kill and murder Florencio Carillo, a human being. He entered his plea of not guilty. A trial by jury resulted in his conviction of the crime of manslaughter. His motion for a new trial was denied and he was ordered committed to the state prison at San Quentin for the term prescribed by law. A stay of execution was granted pending appeal.

It appears from the evidence that on the afternoon of April 14, 1930, the deceased, accompanied by John Garcia and Juan Provencia were walking along a street near a reservoir in East Highland in San Bernardino County, talking and joking with each other. Near this reservoir stood an old Ford car which was used for pumping. As they came near this Ford, deceased picked up a rock and threw it in the direction of the Ford. The rock did not hit the Ford but went into the reservoir. Appellant was passing by at this time and told him not to throw any rocks at his Ford, that he used it to pump water. John Garcia asked appellant to show him where the rock hit the Ford and defendant replied, "Well, it's all right; I am just telling you that, not to throw any rocks at that Ford." After this the deceased and his two companions continued their walk along the same street, later returning and again meeting appellant. The witness John Garcia asked appellant if he had any beer for sale and he replied that he did not.

Deceased and his two companions then left appellant and they did not encounter each other again until in the evening

about 8:30 o'clock when they met in a poolroom in East Highland. Neither of deceased's companions saw appellant in the place until they heard him command the deceased to take his hands out of his pockets. At this time the deceased was leaning against a pool-table with his hands in his pockets. When the witness Provencia heard this command he turned and saw appellant with a revolver in his hand. Appellant repeated the command, and stepping toward the deceased, pulled the gun and shot him.

From the testimony of the prosecution's witnesses it does not appear that any argument or discussion of any kind preceded the shooting. Furthermore, it appears from the testimony of the witness Provencia that the deceased did not understand the English language and we may assume, therefore, that he did not understand the command made by appellant. Provencia further testified that the deceased was not armed nor did he have any words with the appellant, and that neither he nor the other companion, Garcia, had any words with appellant. This testimony is corroborated in full by the witness John Garcia.

The testimony of these witnesses is further corroborated by that of J. H. Hernandez, proprietor of the poolroom, who testified that the first thing that attracted his attention in the direction of appellant and deceased was appellant's command to the deceased to take his hands out of his pockets or he would kill him. When he heard this he looked up and saw appellant with a revolver in his hand, take a few steps toward deceased, command him again to take his hands out of his pockets and then fired. He further testified that the deceased was not doing anything at this time. This testimony was corroborated by the witness Elpidio Ochoa, who was an employee at the poolroom.

The defense interposed was that the deceased approached appellant in a threatening manner and had two billiard balls in his hands, which were in his pockets. Appellant testified that he only attempted to strike the deceased with the revolver instead of shooting him and did not intend to kill him.

This evidence we believe is clear and at least certainly justifies the verdict of the jury in finding the defendant guilty of manslaughter.

█ Appellant designates several grounds for a reversal of the judgment. The only argument advanced is in support of a fifth ground, to wit, that the court erred in giving the following instruction:

"The offense with which the defendant is charged is murder, a felony, committed as follows: That said Adam Coldwell, on or about the 14th day of April, 1930, in the said County of San Bernardino, State of California, did wilfully, unlawfully and feloniously, and with malice aforethought, kill and murder one Florencio Carillo, a human being.

"It is the duty of the jury to determine from all of the evidence offered in the trial whether the defendant be guilty or not guilty of the offense charged or *guilty of* any lesser degree of crime contained within the offense charged in the information."

It appears from the instruction above quoted that after this was presented to the court, the court supplied the word "guilty" in the last portion thereof. Because of this added word or interlineation appellant contends that the interpretation to be placed upon this instruction is that it was a direction to the jury to find appellant guilty of one of the lesser or included offenses in the charge of murder, if they were unable to convict him of murder in the first degree. The instruction as modified was not as clear as it should have been made, but in substance it told the jury that it was their duty to determine from all the evidence offered whether the defendant be guilty of murder as charged, or guilty, or not guilty of any of the lesser degree of crimes contained within the charge in the information. Particularly is this so when we consider this instruction in connection with the the rest of the charge. Such a construction is one which we believe the jury, as reasonable persons, placed upon this instruction. The jury was fully instructed on the degrees of homicide and circumstances which would reduce the offense from murder to manslaughter and when the right of self-defense existed in connection therewith. The jury was instructed as to the forms of verdict as follows:

"In this case your verdict may be in either of the following forms:

"I.

"We, the jury in the above entitled action, find the defendant guilty of murder in the first degree; or

"II.

"We, the jury in the above entitled action, find the defendant guilty of murder in the first degree and fix his punishment at life imprisonment; or

"III.

"We, the jury in the above entitled action, find the defendant guilty of murder in the second degree; or

"IV.

"We, the jury in the above entitled action, find the defendant guilty of manslaughter; or

"V.

"We, the jury in the above entitled action, find the defendant not guilty.

"In either case, let your verdict be reduced to writing and signed by your foreman before returning into open court."

When the foregoing instruction is considered in connection with the instruction complained of there can be no question but that the jury understood the court's statement to them as to the different types of verdicts they could render. Under these circumstances we see no reversible error in the given instruction. The error complained of is harmless and should be disregarded under section 4½ of article VI of the Constitution of the state of California.

The judgment and order of the trial court denying a. new trial are affirmed.

Barnard, P. J., and Jennings, J., concurred.